No. 90-073

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

CAROL THOMAS HARRISON,

      Plaintiff and Appellant,

  v.

JAMES EDWARD CHANCE,

      Defendant and Respondent.

FILED

AUG 20 1990

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable Jack L. Green, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Rex Palmer, Attorneys, Inc., Missoula, Montana

    For Respondent:

        Samuel M. Warren, Worden, Thane & Haines, Missoula,
Montana

    For Amicus Curiae:

        David Rusoff, Montana Human Rights Commission,
Helena, Montana


Submitted on Briefs:  June 14, 1990

Decided:  August 20, 1990

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Appellant Carol Harrison appeals an order of the Fourth Judicial District Court, Ravalli County, granting summary judgment to respondent James Chance on the ground that the Human Rights Commission provides the exclusive remedy for her claim of sexual harassment against her employer. Harrison also appeals the District Court's award of costs to the respondent and the court's refusal to impose Rule 11, M.R.Civ.P., sanctions. We affirm with a minor exception.

## ISSUES

1. Did the District Court err in granting the respondent summary judgment on the grounds that the exclusive remedy provision of the Montana Human Rights Act, § 49-2-509(7), MCA, requires the appellant to pursue her sexual harassment claim through the Human Rights Commission rather than filing a complaint in district court?

2. Did the District Court err in holding that the exclusive remedy provision of § 49-2-509(7), MCA, applied to the appellant's claim even though the acts complained of pre-dated passage of provision?

3. Did the District Court err in not holding that application of the Montana Human Rights Act's exclusive remedy provision and 180-day statute of limitations unconstitutionally deprived the appellant of her rights to contract, substantive due process, and equal protection under the Montana and United States Constitutions?

4. Did the District Court err in refusing to sanction the respondent under Rule 11, M.R.Civ.P., for including non-compensable expenses in his memorandum of costs?

5. Did the District Court err in awarding the respondent the cost of taking the appellant's deposition?

## FACTS

Respondent Chance employed appellant Harrison from September 1986 to March 1987 as a horse trainer. Harrison alleges that during her employment, Chance repeatedly made unwelcome sexual advances culminating in a demand that she either "put out or get out." Harrison responded to the ultimatum by resigning and filing a tort action against Chance in the Fourth Judicial District Court. The District Court, however, granted Chance's motion for summary judgment reasoning that under § 49-2-509(7), MCA, proceedings before the Montana Human Rights Commission provided the exclusive remedy for actions based on sexual harassment. The court also awarded the respondent damages and refused the appellant's motion for Rule 11, M.R.Civ.P., sanctions against the respondent. Harrison now appeals those orders.

## THE EXCLUSIVE REMEDY

Did the District Court err in granting the respondent summary judgment on the grounds that the exclusive remedy provision of the Montana Human Rights Act, § 49-2-509(7), MCA, requires the

3

appellant to pursue her sexual harassment claim through the Human Rights Commission rather than filing a complaint in district court?

Summary judgment may be granted when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P. Unlike most summary judgment appeals, the question here is not whether there is an issue of fact; the question is whether Chance is entitled to judgment as a matter of law. Harrison argues that he is not for a number of interrelated reasons. To simplify discussion, we will consider each reason separately.

### Drinkwalter v. Shipton Supply Co., Inc.

The appellant relies on Drinkwalter v. Shipton Supply Co., Inc. (1987), 225 Mont. 380, 732 P.2d 1335, in arguing that the Montana Human Rights Act does not provide the exclusive remedy for sexually discriminatory acts in the work place. Like Harrison, the plaintiff in Drinkwalter chose to file a district court action alleging several torts based on sexual harassment by her employer rather than filing with the Human Rights Commission. This Court held that, because the legislature had not indicated a clear intent to abolish other common law remedies, the Human Rights Commission did not provide the exclusive remedy for sexual harassment. Drinkwalter, 225 Mont. at 384, 732 P.2d at 1338.

We do not agree that Drinkwalter is controlling; a 1987 amendment to the Human Rights Act legislatively overruled Drink-

4

walter. At the time Drinkwalter was decided, the Montana Human Rights Act did not contain the exclusive remedy provision of § 49-2-509(7), MCA. During hearings before the Senate Judiciary Committee to consider various amendments to the Human Rights Act, LeRoy H. Schramm, Chief Legal Counsel of the Montana University System, proposed an additional amendment based on the following rationale:

> On February 23, 1987, the Montana Supreme Court decided the case of Drinkwalter v. Shipton. Under the holding of that case, persons alleging acts that violate the discrimination provisions of the Human Rights Act and the Governmental Code of Fair Practices need no longer vindicate their rights under the provisions of these acts. Rather, they are allowed to completely bypass the administrative procedures set up by statute and go directly to court alleging tort theories of recovery grounded on the individual dignities clause of the constitution. This amendment would make clear that the statutory procedures for discrimination are exclusive remedies and cannot be bypassed.

Hearing on House Bill 393 Before the Senate Judiciary Committee, 50th Legislature, (March 20, 1987), Exhibit No. 3. The 1987 Legislature adopted the proposed amendment without change or comment as § 49-2-509(7), MCA. It reads:

> The provisions of this chapter [§§ 49-2-101 through -601, MCA] establish the exclusive remedy for acts constituting an alleged violation of this chapter, including acts that may otherwise also constitute a violation of the discrimination provisions of Article II, section 4, of the Montana constitution or 49-1-102. No other claim or request for relief based upon such acts may be entertained by a

5

> district court other than by the procedures
> specified in this chapter.

While it is not clear that the legislature adopted Chief Counsel Schramm's rationale, the passage of the exclusive remedy provision so close in the wake of Drinkwalter and the plain language of the provision indicate that the legislature intended the procedures of the Human Rights Commission provide the exclusive remedy for discrimination in employment.

## Harassment vs. Discrimination

Harrison argues that her claim does not fall under the Human Rights Act because Chance's alleged acts were sexual harassment, not sexual discrimination. The appellant correctly points out that in Drinkwalter this Court stated in dicta that sexual harassment is not sexual discrimination subject to the Human Rights Act. Drinkwalter, 225 Mont. at 385, 732 P.2d at 1339. The current authority, however, overwhelmingly supports the opposite conclusion.

The Human Rights Commission itself defines sexual harassment as sexual discrimination. In the construction of a statute, this Court gives deference to the interpretations of the agency charged with its administration. State v. Midland Materials Co. (1983), 204 Mont. 65, 70, 662 P.2d 1322, 1325. The Commission has explicitly adopted the federal Guidelines on Sexual Discrimination

promulgated by the United States Equal Employment Opportunity

Commission. A.R.M. 24.9.1407. Those guidelines provide:

> Harassment on the basis of sex is a violation
> of Sec. 703 of Title VII. Unwelcome sexual
> advances, requests for sexual favors, and
> other verbal or physical conduct of a sexual
> nature constitute sexual harassment when (1)
> submission to such conduct is made either
> explicitly or implicitly a term or condition
> of an individual's employment, (2) submission
> to or rejection of such conduct by an indivi-
> dual is used as the basis for employment
> decisions affecting such individual, or (3)
> such conduct has the purpose or effect of
> unreasonably interfering with an individual's
> work performance or creating an intimidating,
> hostile, or offensive working environment.

29 C.F.R. § 1604.11(a).

Other jurisdictions' interpretations of laws similar to

Montana's Human Rights Act also provide persuasive evidence that

sexual harassment is sexual discrimination. Because the Montana

Human Rights Act was closely modeled after Title VII, reference to

federal case law is both appropriate and helpful in construing the

Montana Human Rights Act. Johnson v. Bozeman School Dist. No. 7

(1987), 226 Mont. 134, 139, 734 P.2d 209, 212. The United States

Supreme Court holds that under Title VII,

> Without question, when a supervisor sexually
> harasses a subordinate because of the subor-
> dinate's sex, that supervisor "discrimi-
> nate[s]" on the basis of sex.

Meritor Savings Bank, FSB v. Vinson (1986), 477 U.S. 57, 64, 106

S.Ct. 2399, 2404, 91 L.Ed.2d 49, 58. Furthermore, every state

considering the issue, as well as the District of Columbia, have

7

reached the same conclusion in construing their human rights acts. Holien v. Sears, Roebuck and Co. (Or. 1984), 689 P.2d 1292, 1299; Howard Univ. v. Best (D.C. App. 1984), 484 A.2d 958, 978; Continental Can Co., Inc. v. State (Minn. 1980), 297 N.W.2d 241, 249; see also Glasgow v. Georgia-Pac. Corp. (Wash. 1985), 693 P.2d 708, 712.

The reason behind this rule is apparent. When sexual harassment is directed at an employee solely because of gender, the employee is faced with a working environment fundamentally different from that faced by an employee of the opposite gender. Continental Can Co., 297 N.W.2d at 248. That difference constitutes sexual discrimination in employment. We hold that sexual harassment is sexual discrimination under the Montana Human Rights Act.

## The Bisexual Exception

Harrison argues that Chance's acts fall under an exception to the general rule that sexual harassment is sexual discrimination and therefore, are not subject to the Human Rights Act. A number of federal courts have noted that a bisexual supervisor who has harassed both male and female employees is not liable for sexual discrimination. Although the supervisor may have committed a variety of torts, as an equal opportunity lecher, the supervisor has not violated Title VII. See Henson v. City of Dundee (11th Cir. 1982), 682 F.2d 897, 904; Barnes v. Costle (D.C. Cir. 1977), 561 F.2d 983, 990, n.55. Harrison argues that Chance did not

8

discriminate on the basis of gender because he made sexual advances to both her and her son.

The parties' primary contention is whether the allegation of bisexual harassment was properly before the District Court on summary judgment. Uniform District Court Rule 4(a) states in part, "When any motion is filed making reference to discovery, the party filing the motion shall submit <u>with the motion</u> relevant unfiled documents." (Emphasis added.) While the parties debate the meaning of "filing" and "relevant documents," we do not reach those issues. Whatever is filed and however the filing is accomplished, it must precede the summary judgment hearing. See O'Neill v. State (1987), 225 Mont. 364, 366, 732 P.2d 1330, 1331.

The record indicates that the appellant failed to raise the bisexual-harassment theory until after the District Court issued its order granting summary judgment. The complaint contains no charge that Chance harassed her son. The appellant's reply to the respondent's motion for summary judgment includes one sentence vaguely alluding to bisexual harassment, but makes no use of the allegation. The bisexual harassment theory appears for the first time in the appellant's proposed findings of fact and conclusions of law. The record shows that that document was received on October 20, 1989, two days after the District Court signed the summary judgment order. Because the issue was not presented, the District Court made no error in failing to consider the issue of bisexual harassment.

9

## Separate Cause of Action

Finally, Harrison argues that her claim is not limited to the Human Rights Commission because, in addition to sexual harassment, Chance committed a variety of torts against her which provide grounds for her cause of action in district court. Again, her authority is <u>Drinkwalter</u> which allowed the plaintiff to bring tort action based on sexual harassment rather than filing a complaint with the Human Rights Commission. Specifically, Harrison alleges that Chance's conduct amounted to tortious battery, intentional infliction of emotional distress, the tort of outrage, wrongful discharge, and breach of the implied covenant of good faith and fair dealing.

It may be that the alleged acts provide grounds for these and other tort claims. However, the gravamen of the appellant's claim is sexual harassment. Her claim of battery is based on an allegation that Chance forcefully kissed her against her will. The intentional infliction of emotional distress and outrage arise from charges that Chance repeatedly confronted Harrison with sexually explicit innuendos and offers. Likewise, the theories of wrongful discharge and breach of the implied covenant of good faith and fair dealing are based on Harrison's allegations that Chance's constant sexual harassment made her working conditions so intolerable that she was forced to resign.

As in this case, any claim based on sexual harassment can be framed in terms of numerous tort theories. The legislature

expressed its intent that the Commission provide the exclusive remedy for illegal discrimination when it enacted subsection (7) of § 49-2-509, MCA. To allow such re-characterization of what is at heart a sexual discrimination claim, would be to eviscerate the mandate of the Human Rights Commission. The District Court did not err in holding that the Human Rights Commission provided the exclusive remedy for the appellant's claim.

## RETROACTIVE APPLICATION

Did the District Court err in holding that the exclusive remedy provision of § 49-2-509(7), MCA, applied to the appellant's claim even though the acts complained of pre-dated passage of the provision?

Harrison argues that the application of the exclusive remedy provision to her claim violates § 1-2-109, MCA, which provides that no law is retroactive unless expressly declared so by the legislature. The alleged acts occurred between September 1986 when she was hired and March 17, 1987, when she resigned thereby pre-dating enactment of § 49-2-509(7), MCA, on April 16, 1987.

Again we disagree. The legislature provided that the 1987 amendments to the Human Rights Act, including the exclusive remedy provision, would apply to all cases not settled before the time of enactment.

> This act applies to cases pending before the commission for human rights on the effective date of this act and to cases filed with the

11

> commission for human rights on or after the
> effective date of this act.

Act approved April 16, 1987, ch. 511, § 4, 1987 Mont. Laws 1240, 1243. Harrison filed her complaint on September 28, 1987, six months after the April 16, 1987, effective date of the statute. Although Harrison filed in District Court, we have already determined that she should have filed with the Human Rights Commission. The applicability section of the 1987 amendments, therefore, applies to her claim and brings it under the exclusive remedy provision. If we held otherwise, any discrimination claimant could avoid the exclusive remedy provision through the expedient filing of a tort claim in district court, contrary to the intent of the legislature that the Human Rights Act provide the exclusive remedy for all unadjudicated discrimination claims.

## CONSTITUTIONALITY

Did the District Court err in not holding that the application of the Montana Human Rights Act's exclusive remedy provision and 180-day statute of limitations unconstitutionally deprived the appellant of her rights to contract, substantive due process, and equal protection under the Montana and United States Constitutions?

In the recent case of Romero v. J & J Tire, JMH, Inc. (Mont. 1989), 777 P.2d 292, 46 St.Rep. 1159, this Court held that the exclusive remedy provision of the Montana Human Rights Act did not violate either federal or Montana rights to access to the courts,

equal protection, or trial by jury. Harrison now raises several new federal and Montana constitutional issues not covered in Romero.

## Right to Contract

Harrison argues that application of the exclusive remedy provision violates her right to freedom from impairment of contract guaranteed by Article 1, Section 10 of the United States Constitution and Article II, Section 31, of the Montana Constitution, by retroactively effecting the terms of her employment contract with the respondent. She relies on Carmichael v. Workers' Compensation Court (1988), 234 Mont. 410, 415, 763 P.2d 1122, 1126, in asserting that she was vested with a contract right to bring her claim under the laws in effect at the time of her alleged injury. Because Drinkwalter represented the law of Montana at that time, she has a right to bring a tort action with a three-year statute of limitations in district court. Harrison points out that application of the exclusive remedy provision replaces that right to sue in district court with a barren right to bring a claim before the Human Rights Commission. If the Human Rights Act provides her only remedy, it also extinguishes that remedy because its 180-day statute of limitations has already passed. See § 49-2-501(2)(a), MCA.

We agree with the appellant's analysis of the effect of the statute of limitations, but we disagree with her contention that

13

it is unconstitutional. Unlike the workers' compensation claimant in Carmichael, Harrison has no vested contract right to application of the laws in effect at the time of her injury. The rights of an injured workers' compensation claimant are contractual rights. Cadwell v. Bechtel Power Corp. (1987), 225 Mont. 423, 425, 732 P.2d 1352, 1354; see also Carmichael, 234 Mont. at 413, 763 P.2d at 1124. Above, we held that Harrison's claim is essentially a discrimination claim even though it can be couched in terms of a tort claim. The same reasoning applies here; although Chance's alleged acts can be termed a breach of an implied employment contract with Harrison, the gravamen of the claim is sexual discrimination. Because the appellant has no vested contract right, application of the exclusive remedy provision of § 49-2-509(7), MCA, does not violate her right to contract.

## Substantive Due Process

Harrison next argues that application of the exclusive remedy provision violates her right to due process under Amendment XIV, Section 1 of the United States Constitution and Article II, Section 17, of the Montana Constitution, for the same reasons that it violates her right to contract; the legislature has retroactively extinguished her right to bring a tort action in district court.

Again, we disagree. Freedom from sexual discrimination is a constitutional right in Montana under Article II, Section 4, of the Montana Constitution, but no person has a vested interest in a

14

particular remedy to a violation to that right. See Meech v. Hillhaven West, Inc. (Mont. 1989), 776 P.2d 488, 496, 46 St.Rep. 1058, 1068. The legislature is free to impose reasonable procedural requirements on the available remedies so long as those requirements have a rational basis. See Linder v. Smith (Mont. 1981), 629 P.2d 1187, 1192, 38 St.Rep. 912, 917. We have already held that the legislature had a rational basis for making the Human Rights Commission the exclusive means of combating illegal discrimination in Montana. Romero, 777 P.2d at 295, 46 St.Rep. at 1161. Like any other statute of limitations, the Human Rights Act's 180-day limitation provides a reasonable means of preventing stale claims and ensuring that claims are filed before essential evidence disappears.

## Equal Protection

Harrison's final constitutional argument is that the exclusive remedy provision violates her right to equal protection under Amendment XIV, Section 1 of the United States Constitution and Article II, Section 4, of the Montana Constitution. She contends that a male employee in the same position would fall under the three-year statute of limitations for torts while she is subject to the 180-day statute of limitations of the Human Rights Act. We find little reasoning and less merit in the appellant's assertion. Both male and female victims of sexual discrimination in employment

15

have the same rights and are subject to the same procedural requirements of the Montana Human Rights Act.

## RULE 11 SANCTIONS

Did the District Court err in refusing to sanction the respondent under Rule 11, M.R.Civ.P., for including non-compensable expenses in his memorandum of costs?

Following dismissal of the appellant's claim on summary judgment, the respondent submitted a memorandum of costs including the costs of eight depositions, a subpoena, expert witness fees, a psychological evaluation of the appellant, and various court fees. Harrison objected to the memorandum and asked the District Court to sanction Chance under Rule 11, M.R.Civ.P., contending that none of the listed depositions, expert witness, or psychological evaluation were necessary to the summary judgment proceedings. The court refused without comment and signed a memorandum including only court fees and Harrison's deposition. Harrison now appeals that decision arguing that Chance's memorandum of costs was a frivolous and abusive litigation practice submitted as a ploy to force Harrison into settlement.

This Court recently set out the appropriate standard in reviewing a district court's decision on Rule 11 sanctions.

> This Court will give the district courts wide latitude to determine whether the factual circumstances of a particular case amount to frivolous or abusive litigation tactics . . . . A district court's findings of fact will be

16

> overturned if clearly erroneous. The court's legal conclusion that the facts constitute a violation of Rule 11 will be reversed if the determination constitutes an abuse of discretion. We will review the case de novo only if the violation is based on the legal sufficiency of a plea or motion.

D'Agostino v. Swanson (Mont. 1990), 784 P.2d 919, 926, 47 St.Rep. 10, 17. The District Court "tasted the flavor of the litigation," heard the parties' arguments, and found no need for sanctions. The appellant has raised no new argument which would indicate that the District Court abused its discretion in that decision.

### THE AWARD OF COSTS

Did the District Court err in awarding the respondent the cost of taking the appellant's deposition?

The memorandum of costs approved by the District Court came to $425 including $80 for court fees and $345 for the cost of taking appellant Harrison's deposition. Harrison now argues that the District Court erred in awarding Chance the cost of her deposition because the deposition was not necessary to its summary judgment decision. This time, we agree.

The law controlling this issue is well settled. This case is not an action requiring an award of costs as a matter of course. See § 25-10-101, MCA. The decision to award costs fell within the discretion of the District Court. See § 25-10-103, MCA. The court is empowered to award costs to the prevailing party on summary judgment and to include the cost of depositions as long as they are

17

reasonable in amount and necessary to the summary judgment. See Frigon v. Morrison-Maierle, Inc. (1988), 233 Mont. 113, 125, 760 P.2d 57, 64-65.

We do not believe that Harrison's deposition was necessary to this order. In the summary judgment proceedings, the respondent cited the deposition only to show that Harrison was aware that she could have filed a complaint with the Human Rights Commission and had not done so. Harrison's knowledge of the administrative procedures does not appear to be a fact necessary to the decision to dismiss. The primary issue was whether she was required to file with the Commission.

Even if notice of the Commission's procedures was a material fact, Harrison's deposition provided only redundant authority. Chance also cited the facts contained in the appellant's response to interrogatories to support his contention. Those facts are basically the same as those contained in the deposition. Chance received those answers to interrogatories in April, 1988--ten months before taking Harrison's deposition on February 10, 1989. The respondent had no need to rely on the deposition to secure a summary judgment. The cost of Harrison's deposition is, therefore, disallowed.


EQUITABLE TOLLING

In Erickson v. Croft (1988), 233 Mont. 146, 760 P.2d 706, this Court looked favorably upon the doctrine of equitable tolling.

18

Under that doctrine, the statute of limitations may be tolled when a party reasonably and in good faith pursues one of several possible legal remedies and the claimant meets three criteria:

> (1) timely notice to the defendant within the applicable statute of limitations in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.

Erickson, 233 Mont. at 150-51, 760 P.2d at 708. In Erickson, we found no need to adopt equitable tolling because the appellant failed to meet the first criteria; the first claim did not give adequate notice of the second claim. Erickson, 233 Mont. at 152, 760 P.2d at 709.

Under the facts of this case, the doctrine of equitable tolling may be appropriate if Harrison refiles her claim with the Human Rights Commission. Unlike Erickson, here the District Court claim may give Chance adequate notice of a claim before the Commission. Furthermore, in filing with the District Court, the appellant appears to have relied reasonably and in good faith upon this Court's holding in Drinkwalter. As a case of first impression holding that the legislature overruled Drinkwalter, this case should not prevent the appellant from having her substantive claims heard by the Human Rights Commission.

19

The cost of Harrison's deposition is disallowed. The summary judgment is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices