No. 94-109

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1994**

TINA HASH,

      Plaintiff and Appellant,

  -vs-

U.S. WEST COMMUNICATIONS SERVICES,
a corporation and RUSS CRAVENS
and his marital community,

      Defendants and Respondents.

FILED

DEC 19 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Dustin Deissner; Van Camp & Bennion, Spokane,
           Washington

           Russell K. Jones, Attorney at Law, Spokane,
           Washington

      For Respondent:

           Ronald F. Waterman; Gough, Shanahan, Johnson
           & Waterman, Helena, Montana

Submitted on Briefs:  August 4, 1994

Decided:  December 19, 1994

Filed:

_____
         Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Tina Hash (Hash) appeals the order of the First Judicial District, Lewis and Clark County, dismissing her discrimination complaint based on the expiration of the statute of limitations period. We affirm.

Three issues are presented.

1. Did the District Court err in failing to hold as a matter of law, that the date of notification of elimination constituted the date of discovery of the discriminatory acts, thus beginning the relevant time periods?

2. Did the District Court err by holding that the timely filing of a Human Rights Commission complaint is a prerequisite to filing suit on a discrimination complaint where the Human Rights Commission has issued a right-to-sue letter?

3. Did the District Court err by failing to find a genuine issue of material fact as to whether the time period for filing a claim was equitably tolled?

After working for U.S. West for almost thirteen years, Hash was informed on June 19, 1991, that her job position was being combined with another position and, therefore, that her job would be eliminated. Hash applied for another U.S. West position but was not offered any other job. Her position was eliminated on January 31, 1992, as planned. Hash contends that in June 1991 she was told her position would be eliminated, not that she would be fired, and that she applied for another job before the elimination of her position in January 1992. She contends she did not know she would

2

be deprived of a job until she was not offered another position after January 1992.

Pursuant to a U.S. West company policy for handling intra-company complaints, Hash filed a discrimination complaint with U.S. West personnel and the U.S. West equal employment office (EEO) in December 1991. She was referred to another U.S. West employee in Minneapolis, Minnesota, and then to U.S. West's regional equal employment officer. In May 1992 the regional officer advised Hash that he found no discrimination. On June 5, 1992, Hash filed allegations against U.S. West and her supervisor Russ Cravens (U.S. West) with the Human Rights Commission (HRC). On July 24, 1992, the HRC wrote to Hash that it had no authority in the matter because the allowable time to file had expired. The HRC also offered to issue a right-to-sue letter, allowing Hash to pursue her claim in court. The HRC issued a right-to-sue letter on December 9, 1992. Hash filed the current action on March 3, 1993.

The District Court granted U.S. West's motion for summary judgment, concluding that the HRC provides the exclusive remedy to parties alleging unlawful discriminatory practices and the filing period for Hash's complaint expired prior to her filing.

Summary judgment is properly granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Toombs v. Getter Trucking, Inc. (1993), 256 Mont. 282, 284, 846 P.2d 265, 266. To satisfy its burden of proving that there is a complete absence of material fact, "the movant must make a clear

3

showing as to what the truth is so as to exclude any real doubt as to the existence of any genuine issue of material fact." _Toombs_, 846 P.2d at 266. We apply the same standard of review as that used by the district court. _Toombs_, 846 P.2d at 266.

I

Did the District Court err in failing to hold, as a matter of law, that the date of notification of elimination constituted the date of discovery of the discriminatory acts, thus beginning the relevant time periods?

A cause of action accrues under the Human Rights Act (Act) when "the alleged unlawful discriminatory practice occurred or was discovered." Section 49-2-501(2)(a), MCA. On June 19, 1991, U.S. West notified Hash that on January 31, 1992 her position would be eliminated. Hash argues that the statutory period started at the termination date because she hoped and believed, up to the **time** of termination, that she would be given another U.S. West position. We disagree.

If there was a discriminatory act in this case, it occurred when U.S. West notified Hash of its decision to eliminate her position. It was at that time that Hash discovered the alleged discriminatory practice. Hash's hopes and beliefs cannot contradict the fact that she discovered the alleged discriminatory act(s) on June 19, 1991. In this case, Hash did not support her position that her cause of action did not accrue on June 19, 1991. We hold that the District Court did not err in concluding that the alleged discriminatory practice was discovered and accrued on June

4

19, 1991 when Hash was advised that her position would be eliminated.

## II

Did the District Court err by holding that the timely filing of a Human Rights Commission complaint is a prerequisite to filing suit on a discrimination complaint, where the HRC has issued a right-to-sue letter?

The Act is administered by the HRC. Three statutory provisions lead us to conclude that Hash's complaint is barred. First, HRC enforcement requires that discrimination-related complaints, such as Hash's, be filed with the HRC within 180 days after the alleged unlawfully discriminatory action occurred or was discovered. Section 49-2-501(2)(a), MCA. Alternatively, if the complainant initiates efforts to resolve the dispute "by filing a grievance in accordance with any grievance procedure established by a collective bargaining agreement, contract, or written rule or policy, the complaint may be filed within 180 days" of the conclusion of the grievance procedure if the procedure concludes within 120 days after the alleged discriminatory practice, or within 300 days if the grievance procedure does not conclude within 120 days. Section 49-2-501(2)(b), MCA. Second, § 49-2-501(2)(c), MCA, provides that complaints not filed within the specified period "may not be considered by the [Human Rights C]ommission." Third, the Act provides that the district court filing procedures in the Act provide the exclusive remedy and procedures to make claims alleging discrimination. Section 49-2-509(7), MCA.

5

Applying the statutory time limits to Hash's claim, we conclude that Hash's claim is barred because it was filed too late under any of the statutory provisions. On June 19, 1991, U.S. West notified Hash that her position would be eliminated; we concluded above that that was the date of the alleged discriminatory act. On June 5, 1992, 351 days after the alleged discriminatory act, Hash filed her claim with the HRC. Accordingly, Hash did not comply with the 180-day filing requirement of § 49-2-501(2)(a), MCA, and her complaint was barred under that section. Section 49-2-501(2)(a), MCA.

In the alternative, we determine whether Hash complied with the 300-day time limit set forth in § 49-2-501(2)(b), MCA. Hash testified in her August 20, 1993 affidavit that she followed what she believed to be a written U.S. West policy for handling a discrimination complaint within the company. The record is not clear on the specifics of U.S. West's grievance policy. Nevertheless, assuming that Hash initiated whatever intra-company grievance policies were available to her in December 1991, when she filed her complaint with U.S. West's personnel officer, that grievance procedure concluded in late May 1992, when Hash was notified of U.S. West's conclusion that it found no discrimination. This was more than 120 days after she initiated the U.S. West grievance, so we must then examine whether Hash filed her claim within 300 days after the alleged unlawful discriminatory practice occurred. Section 49-2-501(2)(b), MCA. Again, Hash filed her claim 351 days after the alleged discriminatory act. Under this

6

analysis, too, Hash's claim is barred by § 49-2-501(2)(b) and (c), MCA.

Hash clearly did not file with the HRC within 180 days of the alleged discriminatory acts, as required by § 49-2-501(2)(a), MCA. Similarly, since the grievance procedure initiated in December 1991 did not conclude within 120 days, Hash did not file within the 300-day period allowed under § 49-2-501(2)(b), MCA. Her complaint with the HRC was thus time-barred and properly rejected by the HRC. Section 49-2-501(2)(c), MCA.

The HRC's issuance of a right-to-sue letter does not toll the statutory period. A HRC right-to-sue letter constitutes "the completion of the administrative process with regard to any complaint of discrimination in which a right to sue letter is issued." 24.9.264(1), ARM. The HRC does not have the authority to establish jurisdiction in a district court. Rather, a right-to-sue letter is one mechanism permitting a claimant to proceed beyond the HRC, assuming jurisdiction in the district court is otherwise legally established.

In the instant case, the HRC concluded that Hash's complaint was time barred and could not be considered by the HRC. In a letter to Hash, the HRC stated it would docket her complaint and issue a right-to-sue letter so that she could pursue the matter in district court. The letter further advised that Hash would "have to establish that the matter was within the jurisdiction of the Commission." See § 49-2-509(3)(a), MCA; see generally 24.9.262A-265, ARM. She was unable to do that.

Hash asserts that timely filing of a discrimination claim with the HRC is not a prerequisite to filing with the district court. We previously have resolved this issue against Hash's position. In Harrison v. Chance (1990), 244 Mont. 215, 797 P.2d 200, we held that the Act provides the exclusive remedy for sexual discrimination claims. We did so on the basis that a 1987 legislative amendment made the Act the exclusive remedy for sexual discrimination. We held that the "statutory procedures for discrimination are exclusive remedies and cannot be bypassed." Harrison, 797 P.2d at 203. Like the plaintiff in Harrison, Hash chose to file a discrimination claim in district court without first timely filing her complaint with the HRC.

In 1987, the Legislature amended the Illegal Discrimination chapter to provide that:

> The provisions of this chapter establish the exclusive remedy for acts constituting an alleged violation of this chapter, including acts that may otherwise also constitute a violation of the discrimination provisions of Article II, section 4, of the Montana constitution or 49-1-102. No other claim or request for relief based upon such acts may be entertained by a district court other than by the procedures specified in this chapter.

Section 49-2-509(7), MCA. The Legislature was aware that under an argument like Hash's, "persons alleging acts that violate the discrimination provisions of the [Act] . . need no longer vindicate their rights under the provisions of [the Act]." Harrison, 797 P.2d at 203; quoting Comments from the Hearing on House Bill 393 Before the Senate Judiciary Committee, 50th Legislature, (March 20, 1987), Exhibit No. 3. The Legislature

8

clearly **intended** that the Act be the exclusive remedy for discrimination claims. We adopted this intent in <u>Harrison</u> and maintain it in the instant case. To permit parties to delay filing with the HRC until the HRC filing **time** ran out and then file their claims directly in district court would, in a sense, gut the Act. We reaffirm our decision that the HRC is the exclusive remedy for Hash's discrimination claim.

III

Did the District Court err by failing to find a genuine issue of material fact as to whether the time period for filing a claim was equitably tolled?

This Court previously considered the doctrine of equitable tolling, which applies when an "injured person has several legal remedies and, reasonably and in good faith, pursues one." Erickson v. Croft (1988), 233 Mont. 146, 152, 760 P.2d 706, 709; citing Collier v. City of Pasadena (App. 1983), 191 Cal.Rptr. 681, 684; <u>Harrison,</u> 797 P.2d at 208.

In this case the doctrine of equitable tolling is not applicable because Hash did not have more than one legal remedy available to her, any one of which she could pursue, in good faith. She had one legal remedy. As we have indicated above, it was Hash's obligation to first timely file her complaint before the HRC, timely filing before the HRC being a prerequisite to her filing in District Court. While she had the right to pursue her intra-company remedy, she was required to do that within the context of the **time** limitations imposed for filing before the HRC,

9

as we have discussed above.

Affirmed.

_____ Justice

We concur:

_____ Chief Justice

_____

_____

_____ Justices

10

Justice Terry N. Trieweiler dissenting.

I dissent from the majority's conclusion that an untimely complaint to the Human Rights Commission precludes a timely complaint in District Court.

U.S. West's argument, with which the majority agrees, is that because Title 49, Chapter 2, of the Montana Code Annotated (the Act), is the exclusive remedy for victims of discrimination, a district court complaint cannot be filed unless there was a timely complaint filed before the Human Rights Commission.

I agree that pursuant to § 49-2-509(7), MCA, the provisions of the Act provide the exclusive remedy for victims of discrimination. However, I also conclude that the plain language of the Act permits the District Court complaint in this case, and that it is the majority who have avoided the Act by superimposing their own procedural requirements which are not otherwise provided.

The problem with the majority opinion is that its entire analysis focuses on whether Hash's complaint before the Commission was timely. Having concluded that it was not, the majority then comes to the further conclusion, without any real analysis, that the District Court complaint must also have been untimely. However, based on the terms of the Act, the latter conclusion does not follow from the first.

Hash concedes that if U.S. West's act of discrimination was notification that her position was being eliminated, then her complaint with the Commission was untimely. Therefore, the analysis should begin from that point.

11

Section 49-2-501(c), MCA, provides that "[a]ny complaint not filed within the time set forth herein may not be considered by the commission." In other words, the Commission has no jurisdiction to consider an untimely complaint. However, § 49-2-509(3)(a), MCA, provides that:

> (3) The commission staff may dismiss a complaint filed under 49-2-501 and allow the complainant to file a discrimination action in district court if:
> (a) the commission staff determines that the commission lacks jurisdiction over the complaint . .

That is exactly what the Commission did in this case. The only remaining question then is whether, once the letter authorizing suit was issued, Hash filed a timely complaint in the District Court.

Section 49-2-509(5), MCA, provides in part that:

> Within 90 days after receipt of a notice of dismissal under section (3) the complainant may petition the district court in the district in which the alleged violation occurred for appropriate relief.

In this case, the Commission issued its letter to Hash authorizing her to file her claim in District Court on December 9, 1992. Her complaint was filed on March 3, 1993, within the 90 days authorized under the Act. It was, therefore, timely pursuant to the plain language of the Act.

The only way to avoid this conclusion is to ignore the plain language of the Act in favor of the majority's own public policy considerations. To do so violates, rather than follows, the exclusive remedy provision found at § 49-2-509(7), MCA.

The majority concludes that:

12

> To permit parties to delay filing with the HRC until the HRC filing time ran out and then file their claims directly in district court, would in a sense, gut the Act.

That conclusion is incorrect. The Commission is not required to issue a right-to-sue letter in all cases where the complaint to the Commission is untimely. Section 49-2-509(2)(b), MCA, provides that:

> (2) The commission staff may refuse to permit removal of a case to district court if:
> . .
> (b) . the party requesting removal has waived the right to request removal to the district court . .

It would not be an abuse of discretion for the Commission to conclude that a claimant had waived his or her right to request removal based on the length of time by which the Commission complaint was late. However, allowing the Commission to exercise discretion by choosing to issue a right-to-sue letter under subparagraph (3)(a), or declining to issue a right-to-sue letter pursuant to subparagraph (2)(b), strengthens the Act, rather than weakening it, by providing the Commission with greater latitude to have claims decided on their merits, rather than based on procedural defects.

For these reasons, I dissent from the majority's conclusion that Tina Hash's complaint in the District Court was barred by her failure to file a timely complaint before the Human Rights Commission. I would reverse the judgment of the District Court.

Because of my conclusion that Tina Hash's claim in the District Court was timely pursuant to the plain language of the

13

Act, I do not find it necessary to discuss the other issues raised on appeal. However, I do not intend to imply by my failure to do so that I agree with the majority's conclusions under either Issue I or Issue III.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.

_____
Justice

14

December 19, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Dustin Deissner, Esq.
Van Camp & Bennion, P.S.
W. 1707 Broadway
Spokane, WA 99201

Russell K. Jones, Esq.
w. 9 Post #315
Spokane, WA 99202


Ronald F. Waterman, Esq. *(picked up a copy 12/19/94)*
Gough, Shanahan, Johnson & Waterman
P.O. Box 1715
Helena, MT 59624


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *S. Gallagher*
Deputy