JUSTICE NELSON
concurs.
¶83 Based on existing law, I concur in the Court’s Opinion. However, I write separately to note the problems which this Court created in Harrison v. Chance, 244 Mont. 215, 797 P.2d 200 (1990).
¶84 The MHRA has always defined unlawful discrimination in employment as the practice of making distinctions “in compensation or in a term, condition, or privilege of employment” based on various attributes such as gender and mental disability when the reasonable demands of the position do not require such distinction. Section 49-2-303(1)(a), MCA. The Harrison decision, however, expanded this definition by holding that “sexual harassment” falls within the definition of “sexual discrimination.” Harrison, 244 Mont. at 221, 797 P.2d at 204. In doing so, this Court reasoned: “When sexual harassment is directed at an employee solely because of gender, the employee is faced with a working environment fundamentally different from that faced by an employee of the opposite gender. That difference constitutes sexual discrimination in employment.” Harrison, 244 Mont. at 221, 797 P.2d at 204 (internal citation omitted).
¶85 Having thus expanded the definition of “sexual discrimination” to include “sexual harassment,” we then categorized the tortious battery at issue as “sexual harassment.” Harrison, 244 Mont. at 220-23, 797 P.2d at 203-05 (among other things, the plaintiffs employer “forcefully kissed her against her will”). Consequently, some forms of tortious conduct now fall within the definition of "discrimination” prohibited by the MHRA. For example, in Arthur v. Pierre Ltd., 2004 MT 303, ¶ 25, 323 Mont. 453, ¶ 25,100 P.3d 987, ¶ 25, where the plaintiffs co-worker “slapped her on the buttocks,” among other things, we applied Harrison to conclude that the conduct at issue was “sexual harassment” contemplated by the MHRA.
¶86 The Harrison decision is problematic because it expanded the statutory definition of “discrimination” drastically and without precision. Consequently, as our Opinion here observes, we have utilized a “gravamen” test to analyze claims where the plaintiff alleges conduct that is both tortious and discriminatory. Opinion, ¶¶ 47-56. *55 However, like Harrison’s notion of discrimination, our “gravamen” approach is remarkably ambiguous, as we have been unable to articulate clear standards by which district courts may determine whether a complaint sounds in discrimination or tort. The “gravamen” of a complaint is essentially determined by an “I know it when I see it” type of analysis. See Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S. Ct. 1676, 1683 (1964) (Stewart, J., concurring) (suggesting that it may be impossible to formulate an intelligible definition of obscenity, but famously stating “I know it when I see it”).
¶87 Of course, these issues are not particularly troubling in the present case because criminal conduct such as non-consensual sex is clearly not a form of “sexual harassment” contemplated by the MHRA’s anti-discrimination provisions.[1] However, in other scenarios that are not as clear cut, Harrison’s vague and expansive notion of discrimination, together with the ambiguity in our “gravamen” approach, will spawn litigation. And how will district courts know what the gravamen of a complaint is where the conduct alleged is not as egregious as the non-consensual sex alleged here, but it is more egregious than the forceful kissing alleged in Harrison or the slapping alleged in Arthur?
¶88 Even more problematic are the consequences of the “gravamen” test in some instances. As our Opinion notes, the MHRA procedures do not allow for a jury trial in discrimination claims. Sections 49-2-505, 49-2-509, MCA. Because Harrison establishes that some tortious conduct falls within the MHRA’s definition of “discrimination,” and because MHRA procedures are the exclusive means of redress for unlawful discrimination in employment, some individuals are now denied a jury trial as a means to redress tortious conduct. However, the right to jury trial in civil suits is a constitutional right which “is secured to all and shall remain inviolate.” Mont. Const, art. II, § 26. Moreover, the right to trial by jury is a fundamental constitutional right and therefore merits the highest level of protection by this Court. Kloss v. Edward D. Jones & Co., 2002 MT 129, ¶ 52, 310 Mont. 123, ¶ 52, 54 P.3d 1, ¶ 52. Thus, in those instances where Harrison’s broad definition of “discrimination” operates to deprive an individual of a jury trial in redressing tortious conduct, our decision clearly conflicts *56 with the plain language of the Montana Constitution.
¶89 Moreover, Harrison creates a paradox with respect to the form of legal relief applicable to similarly situated individuals. As noted, Harrison mandates that an employee subjected to some types of tortious conduct is limited to an MHRA discrimination claim. Harrison, 244 Mont. at 220-23, 797 P.2d at 203-05. However, because Harrison is premised on the presence of some discriminatory intent underlying the tortious conduct, another employee intentionally subjected to the very same tort is not limited to a MHRA claim, but is free to pursue a common-law tort claim, with a jury trial, if the perpetrator did not act with discriminatory motive. This paradox further reveals the flawed nature of Harrison.
¶90 I recognize that in Romero v. J & J Tire, 238 Mont. 146, 151, 777 P.2d 292,295-96 (1989), we held that the MHRA’s prohibition against jury trial in discrimination claims does not violate the right to trial by jury guaranteed by the Montana Constitution. However, we reached that conclusion before Harrison expanded the definition of “discrimination” to include tortious conduct which has traditionally been remedied by way of common-law tort procedures, including trial by jury. Because Harrison so dramatically changed the MHRA in this way, the previously-decided Romero decision contemplated a statutory scheme which was very different than the MHRA as it exists today-i.e., as judicially modified by Harrison. Thus, it is clear that this Court will eventually have to address the validity of Harrison in light of the fact that it deprives litigants of their constitutional right to a jury trial in some instances.
¶91 Additionally, we will eventually have to address the fact that Romero was based on a false premise. Our holding there-that the MHRA’s prohibition against a jury trial in discrimination claims does not violate the constitutional right to a jury trial-was based on the rationale that when the Legislature creates new statutory rights, as with the MHRA, it may also specify a means of adjudication for those rights other than trial by jury. Romero, 238 Mont. at 151, 777 P.2d at 295-96 (citation omitted). However, the right to be free from discrimination in employment was not a new statutory right created by the Legislature. In fact, this right became a fundamental constitutional guarantee in 1972 when we adopted our state Constitution, which provides: “Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, *57 culture, social origin or condition, or political or religious ideas.”[2] Mont. Const, art. II, § 4.
¶92 Finally, our “gravamen” approach has created unnecessary procedural concerns. Because we have provided only vague guidance for determining the gravamen of a complaint, plaintiffs often have difficulty determining whether to file a tort claim in district court or a discrimination claim with the Department of Labor and Industry. Indeed, it appears in this case that Saucier’s counsel initially perceived this as a tort claim; however, as disclosed in briefing, counsel nonetheless filed the MHRA action “out of an abundance of precaution.” This problem is further complicated by the MHRA’s 180-day statute of limitations for filing a discrimination claim. Section 49-2-501(1), (4)(a), MCA. That is, if a plaintiff incorrectly determines that the gravamen of his or her claim is tort, and thus fails to file a discrimination action within 180 days, the plaintiff will be procedurally barred from bringing the discrimination action even if the claim is later adjudicated as having a gravamen of discrimination. Of course, it makes no sense to penalize a plaintiff with such forfeiture where he or she simply mis-applies the “gravamen” analysis, because we have failed to provide adequate guidance for that undertaking.
¶93 Although a plaintiff may be able to overcome this procedural bar through further litigation (see Harrison, 244 Mont. at 228, 797 P.2d at 208, discussing equitable tolling of the MHRA’s statute of limitations where a plaintiff has in good faith pursued a tort claim), we should approve simpler means to resolve this issue preemptively-that is, as long as we perpetuate the “gravamen” approach. For example, where a claim arguably sounds in either tort or discrimination, the plaintiff should be allowed to concurrently file a tort claim in district court and a discrimination claim with the Department of Labor and Industry. If the discrimination claim is filed within the applicable 180-day limit, the MHRA proceedings should then be stayed upon request by the plaintiff while he or she seeks a judicial determination as to the gravamen of the claim. In this way, the discrimination claim would be preserved if the gravamen of plaintiff’s claim is ultimately adjudged to be discrimination. Moreover, if the gravamen of the claim is tort, the dual filing and the stay would allow the Department to avoid unnecessary MHRA proceedings, thereby preserving state resources. *58 We have previously approved a similar dual-filing approach in cases where it is not initially known whether the applicable law is the MHRA or the Wrongful Discharge from Employment Act. Tonack v. Montana Bank of Billings, 258 Mont. 247, 255, 854 P.2d 326, 331 (1993) (allowing for concurrent filing of a MHRA action and a WDEA action, while noting that recovery may only be obtained under one theory or the other)[3].
¶94 It is critical to note that these issues plaguing anti-discrimination law-particularly our redefining of the term “discrimination”-are judicially created problems. While we are obligated to own up to that fact and resolve these issues at some point, I recognize that it is appropriate to treat Harrison and its progeny as controlling in this case.
¶95 That said, I can no longer adhere to the legal fiction that sexual assaults or batteries in the work place are “discrimination.” The common sense-and legal-definition of discrimination is that which is set forth in § 49-2-303(1)(a), MCA, referred to above. Quite simply, sex discrimination includes making distinctions in jobs, advancement, pay, and other conditions or terms of employment based on gender, instead of on merit or some unique requirement of the job. And, it goes without saying, that most sexual discrimination in the workplace is directed against women by men.
¶96 However, presently, under Montana’s jurisprudence, if a male customer of a pizza parlor forcibly kisses a female employee or slaps her buttocks, the employee can sue the customer in tort for, at least, civil battery. Yet, under Harrison and its progeny, if the male supervisor of the same employee forcibly kisses her or slaps her buttocks, that is simply workplace “discrimination”-with the result that the employee forfeits fundamental civil rights and remedies, including access to the courts in tort and a jury trial. Opinion, ¶¶ 39-43.
¶97 This sort of judicially-created legerdemain is, at best, illogical. *59 Worse, characterizing workplace sexual assaults or batteries of women as “discrimination,” trivializes the conduct and the female employee’s fundamental rights to human dignity and individual privacy guaranteed under Article II, Sections 4 and 10, respectively, of Montana’s Constitution. Refusing to acknowledge and name this sort of personal violation and degradation for what it is-a criminal offense and a civil tort-perpetuates the paternalistic view that this sort of behavior is just “boys will be boys” workplace horseplay. Harrison and its progeny marginalize female employees and relegate them to the status of second-class citizens. Moreover, this jurisprudence is antithetical to this Court’s attempts to encourage gender equity and fairness. A sexual assault or battery is precisely that; it is not discrimination.
¶98 Application of the gravamen test to such conduct is not the solution. Indeed, it is part of the problem. The Harrison line of cases should be overruled, and I look forward to the case when that issue is raised, briefed and argued on appeal.
¶99 With that caveat, I concur.
JUSTICE COTTER joins in the Concurrence of JUSTICE NELSON.

 As our Opinion indicates, we do not hold that Saucier was in fact unable to effectively consent to the sexual relations with Keeton. Rather, we accept that allegation only for the purposes of summary judgment analysis, based on the applicable standard of review. Opinion, ¶¶ 32-34, 65-68.

 The opportunity to pursue employment isa fundamental civil right under Article II, Section 3, of the Montana Constitution. Wadsworth v. State, 275 Mont. 287,299,911 P.2d 1165,1172 (1996).

 We have also adopted a similar procedure with respect to the relationship between negligence claims and bad faith claims. In Fode v. Farmers Ins., 221 Mont. 282, 287,719 P.2d 414,417 (1986), we held that because a bad faith claim against an insurer cannot be prosecuted until after the underlying negligence claim is concluded, the plaintiff may file the bad faith claim while concurrently prosecuting the negligence claim, in order to toll the statute of limitations applicable to bad faith claims. However, we held that the bad faith action must be suspended and no discovery proceedings may be conducted while the underlying negligence claim is prosecuted. Fode, 221 Mont. at 287, 719 P.2d at 417. Similarly here, we should allow the discrimination claim to be stayed while the plaintiff seeks a judicial determination of the gravamen of the claim.