Christopher KOOPMAN, a minor child, By and Through his next friends, Mike and Linda KOOPMAN, Appellant (Plaintiff),

v.

FREMONT COUNTY SCHOOL DISTRICT No. 1, Fremont County School District No. 1 Board of Trustees, Craig Loper, Mark McClanahan, Larry Thompson and Harry Rushing, Appellees (Defendants).

No. 95–176.

Supreme Court of Wyoming.

Feb. 21, 1996.

John T. Pappas of Western Law Associates, P.C., Lander, for Appellant.

Paul K. Knight of Mullikin, Larson & Swift L.L.C., Jackson, for Appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Christopher Koopman, by and through his next friends, Mike and Linda Koopman, appeals from the summary judgment which was granted in favor of Appellees Fremont County School District # 1, Fremont County School District # 1 Board of Trustees, Craig Loper, Mark McClanahan, Larry Thompson, and Harry Rushing. The district court found that Koopman had not

exhausted the administrative remedies which were available to him.

We affirm.

## ISSUES

Koopman presents the following issues for our review:

1. Did the district court [err] in granting the defendant[s'] motion for summary judgment by holding, as a matter of law, that the plaintiff's claims and relief sought in this matter could have been brought under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1485 ("IDEA") and therefore the plaintiff[ ] should have exhausted [his] administrative remedies prior to pursuing [his] claims in a court of law?

2. Even if, for any reason, this Court finds that the claims of the plaintiff[ ] could have been appropriately raised under the provisions of IDEA, based upon the undisputed facts of this case, would the requirement of exhaustion of administrative remedies [have] been excused under the exception of futility or other applicable exception?

## FACTS

In January 1992, Koopman, who was a special education student at Lander Valley High School, enrolled in the Naval Junior Reserve Officer Training Corps program which was offered at the high school. A Training Corps field trip was scheduled to be taken during the spring of 1992. The local Training Corps instructors informed Koopman that he would not be allowed to go on the field trip because of his medical problems. Koopman suffered from a seizure disorder, chronic back pain, and asthma. The instructors were concerned that Koopman's medical condition would pose a risk to Koopman and others who were on the field trip. Koopman's mother offered to accompany Koopman on the trip, but the instructors still refused to allow him to go.

A second field trip was scheduled to be taken in the fall of 1992. The instructors again refused to allow Koopman to take part in the trip because of his medical condition.

The instructors also refused to allow Koopman to participate on the Training Corps rifle team. Koopman's parents met with the instructors to discuss the decision to restrict Koopman's Training Corps activities; however, the instructors still refused to allow Koopman to participate.

After the instructors denied Koopman permission to participate in a third field trip which was scheduled to be taken in the spring of 1993, Koopman's parents contacted the high school principal. The principal spoke with the instructors about the parents' concerns, but the decision to restrict Koopman's Training Corps activities was not altered. Although Koopman could have contested the instructors' decisions under the administrative procedures which were available to him, he did not seek any additional relief from the school district at that time. Koopman elected not to enroll in the Training Corps program in the fall of 1993.

Koopman filed this lawsuit in May 1994 after the appellees denied his governmental claim. Koopman's complaint included claims under the "Rehabilitation Act of 1973," 29 U.S.C. § 701 et seq. (1990 & Supp.1995), and the "Americans With Disabilities Act of 1990," 42 U.S.C. § 12101 et seq. (1990). He also stated claims for negligent supervision of employees and negligent instruction. The appellees moved for a summary judgment, and the district court granted their motion, reasoning that, because Koopman had failed to exhaust the administrative remedies which were available to him under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (Supp.1995) (the IDEA), he was barred from asserting his claims in the district court. Koopman appealed to this Court.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *Kahrs v. Board of Trustees for Platte County School District No. 1*, 901 P.2d 404, 406 (Wyo.1995); *see also* W.R.C.P. 56(c). We

examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Jack v. Enterprise Rent–A–Car Co. of Los Angeles*, 899 P.2d 891, 893 (Wyo.1995). We do not accord any deference to the district court's decisions on issues of law. *Kahrs*, 901 P.2d at 406.

## B. Exhaustion of Administrative Remedies

■ Congress passed the IDEA in an effort to help state and local agencies meet the burden of providing disabled children with a suitable education.[1] 20 U.S.C. § 1400; *see also Natrona County School District No. 1 v. Ryan*, 764 P.2d 1019, 1025 (Wyo.1988). In order for the states to qualify for federal funding under the IDEA, they had to have a policy in effect which guaranteed that all disabled children would receive a "free appropriate public education." *Hayes Through Hayes v. Unified School District No. 377*, 877 F.2d 809, 811 (10th Cir.1989). *See also Honig v. Doe*, 484 U.S. 305, 310, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988). The State of Wyoming specifically guarantees that all disabled children receive a free appropriate public education, and it receives funding under the IDEA. *Ryan*, 764 P.2d at 1024–27; *see also* Wyo.Stat. §§ 21–2–501 (1992) and 21–2–502 (1994).

Congress imposed explicit procedural safeguards and requirements in the IDEA. 20 U.S.C. § 1415. The procedural provisions encouraged maximum parental involvement in the children's education. *Hayes Through Hayes*, 877 F.2d at 811; *Learning Disabilities Association of Maryland, Inc. v. Board of Education of Baltimore County*, 837 F.Supp. 717, 721 (D.Md.1993).

Primary among the procedural safeguards employed by IDEA is the requirement that states provide parents of disabled students the right to seek review of any decision concerning their children's education. *Hope v. Cortines*, 872 F.Supp. 14, 16 (E.D.N.Y.1995). The procedural specifica-

tions also placed some responsibility with the parents for protecting their children's education rights. *See Hayes Through Hayes*, 877 F.2d at 812. These responsibilities in many cases included an express requirement that administrative remedies be exhausted. *Id.*

20 U.S.C. § 1415(f) states:

Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children and youth with disabilities, except that *before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (b)(2) and (c) shall be exhausted to the same extent as would be required had the action been brought under this part.*

(Emphasis added.) The exhaustion requirement serves a number of important purposes which include:

"(1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error."

*Hayes Through Hayes*, 877 F.2d at 814 (quoting *Association for Retarded Citizens, Inc. v. Teague*, 830 F.2d 158, 160 (11th Cir. 1987) (citations omitted)).

Koopman did not follow the administrative procedures which were available to him in this case. He contends, however, that he was not required to exhaust the IDEA's administrative remedies because he was seeking compensatory damages and the IDEA provided only injunctive or other prospective relief. Section 1415(f) requires that, if the relief sought is available under the IDEA, the parties must exhaust the IDEA's admin-

---

**1.** IDEA was formerly known as the Education of the Handicapped Act. See *Hope v. Cortines*, 872 F.Supp. 14, 16 n. 4 (E.D.N.Y.1995), and *Natrona*

*County School District No. 1 v. Ryan*, 764 P.2d 1019, 1025 n. 6 (Wyo.1988), for summaries of the history of this act.

istrative remedies even when they do not actually pursue a claim under that act. *Hayes Through Hayes,* 877 F.2d at 812. In other words, parties cannot circumvent the IDEA's exhaustion requirements by asserting claims under other laws while they deliberately avoid asserting a cognizable claim under the IDEA. *Hope,* 872 F.Supp. at 17. In this case, we must, therefore, decide whether the relief which Koopman sought in his lawsuit was available under the IDEA.

The courts which have considered whether monetary damages are available under the IDEA have not reached consistent results. *Compare Board of Education of East Windsor Regional School District v. Diamond ex rel. Diamond,* 808 F.2d 987 (3d Cir.1986) (monetary damages available under the IDEA) *with Valerie J. v. Derry Cooperative School District,* 771 F.Supp. 492 (D.N.H. 1991) (monetary damages not generally available under the IDEA). However, in determining whether a claimant should have exhausted his administrative remedies under the IDEA, some courts have considered more than the type of remedy requested in the complaint when they were defining the term "relief." *See, e.g., Hayes Through Hayes,* 877 F.2d 809; *Hope,* 872 F.Supp. 14. They have looked at the policies which were behind the IDEA and the statutory provisions which defined what types of complaints could be pursued under the IDEA's administrative appeals process to determine whether the relief sought by the claimant was obtainable under the IDEA. *Hayes Through Hayes,* 877 F.2d at 813–14; *see also Carey ex rel. Carey v. Maine School Administrative District # 17,* 754 F.Supp. 906 (D.Maine 1990).

Section 1415(b)(1)(E) broadly defines the matters which may be contested under the IDEA. Under that provision, parents may file complaints for

> any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

20 U.S.C. § 1415(b)(1)(E). The courts, taking into consideration the liberal language of this statutory section, have ruled that the IDEA's exhaustion requirements reach a wide variety of claims which have to do with the public education of disabled children. *See, e.g., M.R. v. Milwaukee Public Schools,* 584 F.Supp. 767 (E.D.Wis.1984). For example, claims made by handicapped students under the Rehabilitation Act and the Americans with Disabilities Act are often also cognizable under the IDEA. *See Hope,* 872 F.Supp. at 20–21.

At the heart of Koopman's complaint is his contention that, when the appellees refused to allow him to join in the Training Corps activities because of his medical condition, they deprived him of the educational benefits which he could have derived from participating in the field trips and on the rifle team. The courts have recognized that extracurricular activities may be considered as being a part of the free appropriate public education which is guaranteed by the IDEA. *See Crocker v. Tennessee Secondary School Athletic Association,* 873 F.2d 933 (6th Cir.1989); *Rettig v. Kent City School District,* 788 F.2d 328 (6th Cir.), *cert. denied,* 478 U.S. 1005, 106 S.Ct. 3297, 92 L.Ed.2d 711 (1986); *Hollenbeck v. Board of Education of Rochelle Township,* 699 F.Supp. 658 (N.D.Ill.1988). The Training Corps rifle team and the field trips were examples of such extracurricular activities. Koopman could have claimed that, under the IDEA, he was entitled to participate in these activities as a part of his free appropriate public education. We conclude, therefore, that Koopman was required to exhaust his administrative remedies under the IDEA before he could pursue his claims in a court of law. 20 U.S.C. § 1415(f).[2]

■■■ Koopman also argues that, even if he could have pursued his claims under the IDEA, he should be excused from having to exhaust his administrative remedies in this case because it would have been futile for him to comply with the administrative appeals process. Some courts have recognized

---

2. Koopman maintains that he was not required to exhaust his administrative remedies because the administrative appeals procedures provided by the high school did not comply with the IDEA requirements. We refuse to consider this issue on appeal because Koopman did not present it to the district court. *Vigil v. Ruettgers,* 887 P.2d 521, 526 (Wyo.1994).

various exceptions to the IDEA's exhaustion requirement. A party may be excused from having to exhaust his administrative remedies if (1) it would be futile for him to follow the administrative procedures, (2) the agency has adopted a policy or pursued a practice of general applicability which is contrary to the law, or (3) it is improbable that appropriate relief could be obtained through the administrative appeals process. *Hope,* 872 F.Supp. at 22. Other courts have determined that a party may be pardoned from exhausting his administrative remedies when severe or irreparable harm will result from the exhaustion requirement being enforced. *See Komninos By Komninos v. Upper Saddle River Board of Education,* 13 F.3d 775, 778–79 (3d Cir.1994); *see also New Mexico Association for Retarded Citizens v. New Mexico,* 678 F.2d 847 (10th Cir.1982).

Koopman argues that it would have been futile for him to exhaust his administrative remedies because he had already been deprived of the educational benefits which he would have derived from participating in the field trips and on the rifle team and because he did not enroll in the Training Corps program in the fall of 1993. He maintains that the school could not replace the lost educational experiences through the administrative appeals process and that monetary damages were his only possible form of relief.

We conclude that it would not have been futile for Koopman to exhaust his administrative remedies and that, therefore, he was not excused from having to comply with the exhaustion requirement. If Koopman had made a timely effort to pursue his administrative remedies, the controversy could well have been resolved before he lost all the educational benefits from the various activities. The IDEA's procedural scheme contemplates exactly this type of situation by emphasizing the necessity of seeking the expertise of the education professionals through the administrative appeals process at the first hint of a controversy between the parents and the educational entity. *Carey ex rel. Carey,* 754 F.Supp. at 923.

Even if, as Koopman suggests, the school could no longer replace the educational experiences which he missed as a result of the appellees' actions, we would still need the record from the administrative proceeding in order to decide whether Koopman was entitled to be compensated under the facts of this case. This type of case should be decided by the courts "only after a serious and thorough examination of the records of the proceedings undertaken by education professionals and the insights of those experts into the problems of the subject child." *Id.*

## CONCLUSION

We hold that no genuine issue of material fact existed in this case and that the appellees were entitled to have a judgment as a matter of law.

Affirmed.