No. 96-471

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


GREG SHIELDS, KERBIE SHIELDS, individually and as parents and
guardians of Nathan Shields, and NATHAN SHIELDS, on his own behalf,

Plaintiffs and Appellants,

v.

HELENA SCHOOL DISTRICT NO. 1, C.R. ANDERSON SCHOOL,
HELENA SCHOOL DISTRICT NO. 1 TRUSTEES, SUPT. GARY
TOOTHAKER, SEC. 504 COORDINATOR SHIRLEY DEVOE, TITLE
IX COORDINATOR MARION EVENSON, C.R. ANDERSON PRINCIPAL
PEP JEWELL, C.R. ANDERSON SCHOOL ASSISTANT PRINCIPAL BRUCE
CAMPBELL,TEAM TEACHERS: CARL ANDERBERG, CATHY COLLINS,
HANS MARTIN, in their capacities as team teachers only, PAT GRASSL, LONA
CARTER, individually and in her official capacity as instructor and counselor at
C.R. ANDERSON SCHOOL, and WILLIAM G. EVERETT, individually and in
his official capacity as an instruction and advisor at C.R. ANDERSON SCHOOL,

Defendants and Respondents.


APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis & Clark,
               The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Matthew J. Sisler, Attorney at Law, Missoula, Montana

For Respondents:

Terry B. Cosgrove, Steven R. Milch; Crowley, Haughey, Hanson, Toole
                              &
Dietrich, Billings, Montana

P. Keith Keller; Keller, Reynolds, Drake, Johnson & Gillespie,
Helena, Montana

Allen B. Chronister; Chronister, Moreen & Larson, Helena, Montana

Submitted on Briefs: January 30, 1997
Decided: August 7, 1997
Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Greg, Kerbie and Nathan Shields (the Shieldses) brought this action in the District
Court for the First Judicial District, Lewis and Clark County, to recover monetary
damages for alleged violations of their constitutional rights and other claims. On
Defendants' motion, the District Court dismissed the action on the basis that the
Shieldses failed to exhaust the administrative procedures available under federal and state
law. The Shieldses appeal the dismissal of their cause of action. We affirm.
We address the following issues on appeal:

1. Whether the Shieldses' Notice of Appeal was premature thereby divesting this Court of jurisdiction to entertain the appeal.

2. Whether the District Court erred in failing to consider the Shieldses' Amendment to Complaint prior to entering its Order.

3. Whether the District Court erred in dismissing the Shieldses' claims on the basis that they failed to exhaust the available administrative procedures under the Individuals with Disabilities Education Act (IDEA).

4. Whether the District Court erred in dismissing the Shieldses' claims on the basis that they failed to exhaust the available administrative procedures under the Montana Human Rights Act (MHRA).

Factual and Procedural Background

The Shieldses filed their Complaint in this action on October 13, 1995, and their
First Amended Complaint on October 16, 1995. They alleged that Defendants failed to
properly identify, evaluate, and classify Nathan as a disabled student thereby denying
Nathan his right to an appropriate education. In addition, they alleged various state tort
claims contending that due to Nathan's disability, he was discriminated against by certain
Defendants.

The latter allegations stem from incidents in which Nathan was prevented from
accompanying other students on a ski trip and was allegedly humiliated by one of his
teachers in front of his classmates. Based on these incidents, the Shieldses filed a
grievance with the school. On January 21, 1995, the school principal informed the
Shieldses that she was in agreement with the decision not to allow Nathan to attend the
ski trip. No mention was made of any disciplinary action against the teacher. The
Shieldses appealed this decision to the superintendent of the Helena School

District. On February 10, 1995, the superintendent informed the Shieldses that he would uphold the principal's determination. The Shieldses next appealed to the Board of Trustees of the Helena School District (the Board). The Board conducted a grievance hearing on June 21, 1995. The Shieldses were notified by letter dated June 30, 1995, that the Board had voted unanimously to uphold the superintendent's determination.

On October 16, 1995, the Shieldses filed their First Amended Complaint in the First Judicial District Court, alleging violations of 42 U.S.C.   1983 (1988) and   504 of the Rehabilitation Act of 1973 (codified at 29 U.S.C.   794), as well as various state tort claims. Defendants filed a Motion to Dismiss on December 6, 1995, alleging that the Shieldses had not exhausted administrative procedures under the IDEA or the MHRA. The Shieldses responded to Defendants' motion asserting that the exhaustion of IDEA and MHRA administrative procedures was not required in this case.

A hearing on the Motion to Dismiss was held on May 2, 1996. The Shieldses filed an amendment to their complaint on June 3, 1996. That same day, the District Court issued its Order dismissing all of the claims made by the Shieldses on the basis that the Shieldses failed to exhaust the available administrative procedures and that the Shieldses failed to prove they were exempt from the exhaustion requirements. The Shieldses appeal the District Court's Order.

Issue 1.

Whether the Shieldses' Notice of Appeal was premature thereby divesting this Court of jurisdiction to entertain the appeal.

The District Court entered its Order dismissing the Shieldses' First Amended Complaint on June 3, 1996. On June 10, 1996, the Shieldses filed what they termed a Motion for Reconsideration. The District Court did not rule on the motion, thus, pursuant to the 60-day time limit for ruling on post-trial motions contained in Rules 59(d) and (g), M.R.Civ.P., the motion was deemed denied on August 9, 1996, 60 days after its filing. However, on July 3, 1996, prior to the disposition of their motion, the Shieldses filed a Notice of Appeal.

Defendants contend that the Shieldses' Motion for Reconsideration was, in effect, a motion to alter or amend the judgment under Rule 59(g), M.R.Civ.P. They also contend that, pursuant to Rule 5(a)(4), M.R.App.P., since the Shieldses filed their Notice of Appeal prior to the disposition of their motion, the Notice of Appeal was premature, thus this Court lacks jurisdiction to entertain the appeal. Rule 5(a)(4), M.R.App. P., (as amended December 19, 1995) provides, in part:

If a timely motion under the Montana Rules of Civil Procedure is filed in the district court by any party: (i) for judgment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional findings of fact, whether

or not an alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion, or if applicable, from the time such motion is deemed denied at the expiration of the 60-day period established by Rule 59(d), Montana Rules of Civil Procedure. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above, or if applicable, from the date of the expiration of the 60-day period established in Rule 59(d), Montana Rules of Civil Procedure. [Emphasis added.]

A motion for reconsideration is not one of the post-judgment motions provided for, or authorized by, the Rules of Civil Procedure. Haugen v. Blaine Bank of Montana (Mont. 1996), 926 P.2d 1364, 1370, 53 St.Rep. 1024, 1028 (citing Taylor v. Honnerlaw (1990), 242 Mont. 365, 367, 790 P.2d 996, 997-98; Anderson v. Bashey (1990), 241 Mont. 252, 254, 787 P.2d 304, 305). We have previously stated, however, that a motion for reconsideration will be equated to a Rule 59(g) motion to alter or amend a judgment if the substance of the motion constructively requests the court to alter or amend the judgment. Haugen, 926 P.2d at 1370 (citing Miller v. Herbert (1995), 272 Mont. 132, 135-36, 900 P.2d 273, 275). In order to make that determination, it is necessary to look at the substance of the motion to identify what type of motion has been presented. Haugen, 926 P.2d at 1370.

We note that Defendants, contrary to the argument they make on appeal, argued in their Memorandum Opposing Plaintiffs' Motion for Reconsideration that there was no procedural basis for the motion and that it was not a Rule 59(g) motion. After reviewing the Shieldses' motion, we agree with Defendants' original contention and we conclude that the Shieldses' motion is not a Rule 59(g) motion as it does not seek to alter or amend the judgment. Nor can the motion be considered equivalent to any of the motions provided for in Rule 5(a)(4), M.R.App.P. Hence, the Shieldses are not bound by the requirement of Rule 5(a)(4) that a notice of appeal filed before the disposition of one of the stated motions shall have no effect and that a new notice of appeal must be filed.

Instead, the Shieldses are bound by the requirements of Rule 5(a)(1), M.R.App.P., which provides:

In civil cases the notice of appeal required by Rule 4 shall be filed with the clerk of the district court within 30 days from the date of the entry of the judgment or order appealed from, except that in cases where service of notice of entry of judgment is required by Rule 77(d) of the Montana Rules of Civil Procedure the time shall be 30 days from the service of notice of entry of judgment. . . .

Rule 77(d), M.R.Civ.P., provides:

Notice of entry of judgment or order served. Within 10 days after entry of judgment or an order in an action in which an appearance has been

made, notice of such entry, together with a copy of such judgment or order or general description of the nature and amount of relief and damages thereby granted, shall be served by the prevailing party upon all parties who have made an appearance, but any other party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers.

As the prevailing party, Defendants should have served the Shieldses with a notice of entry of judgment. The Shieldses would then have 30 days from the service of the notice of entry of judgment to file their Notice of Appeal. However, there is nothing in the rules (other than Rule 5(a)(4), M.R.App.P., which we have already stated does not apply in this case) that would preclude the Shieldses from filing their Notice of Appeal prior to receipt of a notice of entry of judgment. Accordingly, we hold that the Shieldses' Notice of Appeal was not premature and that this Court does have jurisdiction to entertain the appeal.

Issue 2.

Whether the District Court erred in failing to consider the Shieldses' Amendment to Complaint prior to entering its Order.

The District Court filed its Order dismissing the Shieldses' cause of action on June 3, 1996 at 2:49 p.m. The Shieldses did not file their Amendment to Complaint until later that same day. The Shieldses contend on appeal that the District Court erred in issuing its Order prior to the amendment being filed thereby precluding the court from considering the amendment when making its determination.

The May 3, 1996 Scheduling Minute Entry Order states that a "[r]equest for . . . amendment of pleadings must be filed by June 3, 1996." The Shieldses, having already amended their complaint once, were required to obtain leave of the court to amend their pleading a second time. Rule 15(a), M.R.Civ.P., provides, in pertinent part:

Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party. . . . [Emphasis added.]

Since the Shieldses never requested leave of the court to amend their pleadings, their Amendment to Complaint was subject to being stricken.

In any event, there was nothing in the Shieldses' Amendment to Complaint that would have altered the District Court's decision to dismiss the case based upon the Shieldses' failure to exhaust administrative procedures. Accordingly, we hold that the District Court did not err by failing to consider the Shieldses' Amendment to Complaint

prior to entering its Order.

Issue 3.

Whether the District Court erred in dismissing the Shieldses' claims on the basis that they failed to exhaust the available administrative procedures under the IDEA.

The Shieldses contend that they were not required to exhaust administrative procedures under the IDEA because they were seeking relief under 42 U.S.C. 1983 (1988) and exhaustion is only required for plaintiffs seeking relief under the IDEA. They also argue that futility and due process, two exceptions to the exhaustion rule, apply in this case.

Congress enacted the IDEA to address the failure of state education systems to recognize and meet the educational needs of children with disabilities. 20 U.S.C. 1400 (1991). The IDEA guarantees that a free appropriate public education and related services will be available to meet the unique needs of all children with disabilities by providing federal funding to states that furnish special education services to students with disabilities. 20 U.S.C. 1400(b)(9) and 1400(c) (1991); 20 U.S.C. 1412 and 1413 (1988). The term "related services," as used in the IDEA, includes recreational activities where such activities are required to assist a disabled student in benefitting from special education. 20 U.S.C. 1401(a)(17) (1988).

Congress imposed explicit procedural safeguards and requirements in the IDEA. 20 U.S.C. 1415 (1994). For instance, parents are entitled to be notified in writing of changes the school district proposes or refuses to make in their child's educational program. 20 U.S.C. 1415(b)(1)(C) (1994). Also, parents have the right to examine their child's educational records and obtain an independent evaluation of their child. 20 U.S.C. 1415(b)(1)(A) (1994). But the primary procedural safeguard employed by the IDEA is the directive that parents of disabled students have the right to seek review of any decision concerning their children's education. Koopman v. Fremont Cty. School Dist. No. 1 (Wyo. 1996), 911 P.2d 1049, 1052 (citing Hope v. Cortines (E.D.N.Y. 1995), 872 F.Supp. 14, 16). This right encompasses an opportunity to bring complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. 1415(b)(1)(E) (1994). Moreover, the IDEA contains an express requirement that administrative remedies be exhausted:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 U.S.C.A. 790 et seq.], or other Federal statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief

that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. 1415(f) (1994).

Montana has implemented the IDEA through Title 20, chapter 7, part 4 of the Montana Code Annotated and has established procedures in accordance with the IDEA in 10.16.2401 et seq., ARM. Montana's regulations also provide that a complainant may bring a civil action in district court only after exhausting the procedures set forth in the administrative rules. Section 10.16.2417(5), ARM.

In the case before us, the Shieldses failed to appeal the decision of the school district to the State Superintendent of Public Instruction. Thus, the Shieldses failed to exhaust the administrative remedies under the IDEA and Montana's administrative rules prior to bringing their action in District Court. The Shieldses contend, however, that they were not required to exhaust the administrative procedures under the IDEA because they were seeking compensatory damages under 42 U.S.C. 1983 and the IDEA provides only injunctive or other prospective relief.

In Koopman v. Fremont Cty. School Dist. No. 1 (Wyo. 1996), 911 P.2d 1049, a special education student and his parents made similar contentions regarding the relief available under the IDEA and the futility of exhausting the administrative requirements thereof. The complainants in Koopman brought a cause of action against school officials, the school district, and its board of trustees under the Rehabilitation Act and the Americans with Disabilities Act alleging that the student was denied the opportunity to participate in various extracurricular activities because of his disabilities. The Wyoming Supreme Court held that because 1415(b)(1)(E) of the IDEA provides that parents may file complaints for "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," the relief sought by complainants was also obtainable under the IDEA, thus exhaustion under that Act was required before complainants could pursue their claims in a court of law. Koopman, 911 P.2d at 1053.

In like manner, in the case before us, the Shieldses sought relief, for the failure of Defendants to properly identify, evaluate and classify Nathan as a disabled student thereby denying him his right to an appropriate education. Thus, the Shieldses' claim could have been brought under the IDEA and, pursuant to 20 U.S.C. 1415(f), since relief was available under the IDEA, the Shieldses had to exhaust the IDEA administrative procedures before instituting a civil action in district court. "[P]

arties
cannot circumvent the IDEA's exhaustion requirements by asserting claims under other laws while they deliberately avoid asserting a cognizable claim under the IDEA." Koopman, 911 P.2d at 1053 (citing Hope v. Cortines (E.D.N.Y. 1995), 872 F.Supp. 14, 17).

The Shieldses contend that exhaustion of the administrative requirements under the IDEA would have been futile in their case as Nathan is no longer enrolled in the school where the alleged discrimination occurred.  The complainants in Koopman made a similar argument, however, the Wyoming Supreme Court concluded that if the complainants had made a timely effort to pursue their administrative remedies, the controversy could well have been resolved before they lost all the educational benefits from the various activities that had been denied the student.  Koopman, 911 P.2d at 1054.  So too, in the instant case, the Shieldses should have made a timely effort to appeal the decision of the Board to the State Superintendent of Public Instruction.  As noted in Koopman:

The IDEA's procedural scheme contemplates exactly this type of situation by emphasizing the necessity of seeking the expertise of the education professionals through the administrative appeals process at the first hint of a controversy between the parents and the educational entity.  [Citation omitted.]

Even if, as Koopman suggests, the school could no longer replace the educational experiences which he missed as a result of the appellees' actions, we would still need the record from the administrative proceeding in order to decide whether Koopman was entitled to be compensated under the facts of this case.  This type of case should be decided by the courts "only after a serious and thorough examination of the records of the proceedings undertaken by education professionals and the insights of those experts into the problems of the subject child."

Koopman, 911 P.2d at 1054 (quoting Carey v. Maine School Administrative Dist. No. 17 (D.Me. 1990), 754 F.Supp. 906, 923).

Accordingly, we hold that the District Court did not err in dismissing the Shieldses' claims on the basis that they failed to exhaust the available administrative procedures under the IDEA.

Issue 4.

Whether the District Court erred in dismissing the Shieldses' claims on the basis that they failed to exhaust the available administrative procedures under the MHRA.

The MHRA, Title 49 of the Montana Code Annotated, provides in pertinent part:
It is an unlawful discriminatory practice for an educational institution:
(1) to exclude, expel, limit, or otherwise discriminate against . . . an individual enrolled as a student in the terms, conditions, or privileges of the institution because of race, creed, religion, sex, marital status, color, age, physical disability . . . or because of mental disability, unless based on

reasonable grounds[.]

Section 49-2-307, MCA.  To assert a claim of unlawful discrimination, an individual must file a complaint with the Montana Human Rights Commission, stating the name and address of the educational institution alleged to have engaged in the discriminatory practice and the particulars thereof.  Section 49-2-501(1), MCA.  No action may be filed in district court until the procedures of the Montana Human Rights Commission have been exhausted.  Section 49-2-509(7), MCA.

In their First Amended Complaint, the Shieldses alleged that they were unlawfully discriminated against by certain Defendants because of Nathan's disabilities.  They noted in their complaint that they did not pursue their discrimination claims with the Montana Human Rights Commission as required by  49-2-509(7), MCA, prior to filing the complaint in District Court.  The Shieldses contend on appeal that their claims are state tort actions that do not fall within the MHRA, thus they were under no obligation to exhaust administrative remedies.

In Harrison v. Chance (1990), 244 Mont. 215, 797 P.2d 200, the plaintiff made the same argument regarding her allegations of sexual harassment by her employer.  We ruled in Harrison that although her employer's alleged acts provided grounds for various tort claims, the gravamen of plaintiff's complaint was sexual harassment and, under the MHRA, sexual harassment is sexual discrimination.  Harrison, 797 P.2d at 205.  We noted in that case that when the legislature enacted  49-2-509(7), MCA, it expressed its intent that the Montana Human Rights Commission provide the exclusive remedy for illegal discrimination.  Thus, we held in Harrison that pursuant to  49-2-509(7), MCA, the MHRA provided the exclusive remedy for plaintiff's claims.  Harrison, 797 P.2d at 205.  See also Bruner v. Yellowstone County (1995), 272 Mont. 261, 900 P.2d 901; Hash v. U.S. West Communications Services (1994), 268 Mont. 326, 886 P.2d 442.

So too, the gravamen of the Shieldses' complaint is discrimination.  Their First Amended Complaint is replete with allegations that they were unlawfully discriminated against by certain Defendants because of Nathan's disabilities.  Specifically, they alleged that Nathan was discriminated against when he was denied participation in a school sponsored ski trip; when he was humiliated by one of his teachers for not being able to participate in the ski trip; when he was repeatedly referred to by this same teacher as "Casper" because of his pale complexion; and when the school failed to classify him as a disabled student.

Section 49-2-509(7), MCA (1995), provides:

The provisions of this chapter establish the exclusive remedy for acts constituting an alleged violation of this chapter, including acts that may otherwise also constitute a violation of the discrimination provisions of Article II, section 4, of the Montana constitution or 49-1-102.  No other

claim or request for relief based upon such acts may be entertained by a district court other than by the procedures specified in this chapter.

Hence, under the MHRA, the Shieldses were required to file a written, verified complaint with the Montana Human Rights Commission.  Section 49-2-501, MCA.  Only after availing themselves of the administrative procedures under the MHRA could they then bring their claim in district court.  Section 49-2-509(7), MCA; Harrison, 797 P.2d at 205.

Accordingly, we hold that the District Court did not err in dismissing the Shieldses' claims on the basis that they failed to exhaust available administrative procedures under the MHRA.

Affirmed.

/S/  JAMES C. NELSON


We concur:

/S/  J. A.  TURNAGE
/S/  KARLA M. GRAY
/S/  WILLIAM E. HUNT, SR.
/S/  JIM REGNIER