No. 99-640

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 95

GREAT FALLS PUBLIC SCHOOLS,

Petitioner and Respondent,

v.

LES JOHNSON, o/b/o AMANDA

JOHNSON, and the MONTANA

HUMAN RIGHTS COMMISSION,

Respondents and Appellants.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Mary Gallagher, Montana Advocacy Program, Missoula, MT

Kevin Braun, Special Assistant Attorney General, Helena, MT

For Respondent:

Charles R. Johnson, Marra, Wenz & Johnson, P.C., Great Falls, MT

For Amicus Curiae

Elizabeth A Kaleva, Montana School Boards Association, Helena, MT

Jeffrey A. Weldon, Geralyn Driscoll, Office of Public Instruction, Helena, MT

Argued: January 16, 2001

Submitted: January 21, 2001

Decided: June 7, 2001 Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Appellant, Les Johnson, originally brought this action before the Montana Human Rights Commission. Johnson alleged, on behalf of his daughter, that the Great Falls School District discriminated against Amanda Johnson by failing to provide adequate physical access to Great Falls High School. Following a hearing, the Hearings Examiner for the Human Rights Commission concluded that the Great Falls School District discriminated against Amanda by failing to adequately monitor and address Amanda's physical access problems. The School District appealed to the District Court for the Eighth Judicial District in Cascade County. The District Court reversed the Human Rights Commission's final order. Johnson now appeals from the order of the District Court. We reverse the District Court and reinstate the order of the Human Rights Commission.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court err when it concluded that the Montana Human Rights Commission lacked jurisdiction to hear this matter prior to exhaustion of administrative procedures provided for by the Individuals with Disabilities in Education Act?

¶4 2. Did the District Court err when it concluded that the Montana Human Rights Commission exceeded its statutory authority by requiring the School District to monitor Amanda's progress?

## FACTUAL BACKGROUND

¶5 Les Johnson brought this action on behalf of his daughter, Amanda, who suffers from Campomelic Syndrome and is paralyzed below her mid-back. Amanda is confined to a wheelchair as a result of her physical disabilities.

¶6 At the time this complaint was filed, Amanda and her family lived in the Great Falls High School (GFHS) district boundaries in Great Falls, Montana. GFHS conducted an Americans with Disabilities Act (ADA) survey of its facilities in 1992. The survey identified physical access problems for students with disabilities. Aware of Amanda's special needs and the numerous barriers to access at Great Falls High, the Johnsons brought Amanda's access issues to the attention of the Great Falls School District (District) prior to her arrival as a freshman in 1995. The most significant physical barrier at GFHS was the fact that there was no elevator providing Amanda with access to classrooms on the second floor of the school. Confined to the main floor, Amanda was unable to participate in science labs, could not use the library, and enjoyed only restricted access to the gym. In addition, Amanda faced numerous physical barriers: she had to go outside to access the cafeteria; her access to the cafeteria was restricted by a heavy locked service door; the sidewalks outside the school were often snow-covered and dangerous; she experienced parking problems; many doors were too heavy for her to open; the counter tops in the office were too high; and the rest rooms, water fountains, vending machines, and public phones were not accessible.

¶7 Because the installation of an elevator would have resulted in the temporary loss of classroom space at an already crowded school, the District determined that it could not build an elevator at GFHS and continue to provide educational services to the rest of the student body. However, the District prepared Individualized Education Programs (IEPs) for Amanda in 1994, 1995, and 1996. These IEPs attempted to accommodate Amanda by scheduling her classes on the main floor and transporting her to Charles M. Russell High School (CMR) for science labs. During Amanda's time at GFHS, the District fitted desks to accommodate Amanda, provided special seating, made minor physical adjustments to the building, provided a parking space in the faculty lot, attempted to coordinate snow removal with Amanda's arrival, and assigned a staff member to help Amanda use the cafeteria.

¶8 As part of the IEP process, the District informally communicated with Amanda and her parents about any access problems Amanda experienced. The District designated Dean of Students Paula Paul as Amanda's primary contact. However, although Amanda is bright

and articulate (she maintained a 3.7 grade point average at GFHS), she is not outspoken. She felt the District was unresponsive to her concerns and often did not bring the problems she faced to the administration's attention. Consequently, the District's efforts to address her problems were not completely effective.

¶9 Dissatisfied with the District's efforts to accommodate Amanda, the Johnsons filed an action with the Montana Human Rights Commission (Commission) on June 14, 1995. The complaint alleged that the District illegally discriminated against Amanda by failing to provide an accessible building in violation of two sections of the Montana Human Rights Act (MHRA), §§ 49-2-307(1) and -308(1)(a), MCA. The Johnsons requested that the District install an elevator at GFHS and generally improve accessibility for Amanda. The Johnsons did not seek monetary relief. Following a contested case hearing, the Hearings Examiner issued a proposed order on March 24, 1998.

¶10 The Hearings Examiner found that Amanda had far less access to GFHS than her classmates but concluded that the District had provided reasonable access in light of the resources available to meet Amanda's needs. The Hearings Examiner also concluded that the District violated the MHRA when it relied upon Amanda to provide notice of the barriers she faced rather than aggressively monitor and consult with her to identify accommodation problems and address them as they arose. The Hearings Examiner ordered the District to proactively monitor accommodations provided to students with physical disabilities. The Hearings Examiner further ordered that the District take steps to minimize the likelihood of future violation of the MHRA. These steps included: preparation of a written policy statement to ensure reasonable accommodation; identification of individuals responsible for monitoring the success of accommodations and for identifying problems; consultation and dialogue with disabled students and their parents; adoption of policies to "proactively" and "aggressively" monitor the needs of physically disabled students; periodic self-evaluation by the District; preparation of draft statements of these policies and the distribution of the adopted policies to affected students and parents; and verification procedures to ensure the efficacy of the District's attempts to accommodate disabled students.

¶11 Despite several exceptions filed by the District, the Commission adopted the findings of fact and conclusions of law of the Hearings Examiner, with minor changes, in its final order on September 10, 1998. The District then filed for judicial review of the Commission's order in the District Court for the Eighth Judicial District in Cascade County.

¶12 The District made two arguments to the District Court. First, the District argued that the Commission lacked jurisdiction to consider the complaint until the Johnsons exhausted their administrative remedies pursuant to the Individuals with Disabilities in Education Act (IDEA) through the Montana Office of Public Instruction (OPI). Second, the District argued that the relief granted exceeded the statutory authority of the Commission.

¶13 On September 3, 1999, the District Court reversed the Commission's decision that the District had illegally discriminated against Amanda and overruled the Commission's order, including the remedies imposed. The District Court found that IDEA exhaustion was required and that the Commission erred as a matter of law when it determined that the District had a legal duty to aggressively and proactively monitor the accommodations made for Amanda. Because of its conclusion that no legal duty existed, the District Court further concluded that the remedies imposed were beyond the statutory authority of the Commission. Johnson and the Commission now appeal from the District Court's order. The Superintendent of Public Instruction and the Montana School Boards Association appeared and filed briefs as Amicus Curiae in support of the District's position.

## STANDARD OF REVIEW

¶14 The standard of review for final decisions of the Human Rights Commission is whether its findings of fact are clearly erroneous and whether the agency's interpretations of the law are correct. *Hearing Aid Inst. v. Rasmussen* (1993), 258 Mont. 367, 372, 852 P.2d 628, 631 (*citing Steer, Inc. v. Dep't of Revenue* (1990), 245 Mont. 470, 474, 803 P.2d 601, 603). The function of the district court and appellate court in reviewing an administrative decision is not to substitute its judgment for that of the administrative agency or board, but to review the whole record to determine if the administrative findings are clearly erroneous or if the agency's conclusions of law constitute an abuse of discretion. *Baldridge v. Board of Trustees* (1994), 264 Mont. 199, 205, 870 P.2d 711, 714.

## DISCUSSION

## ISSUE 1

¶15 Did the District Court err when it concluded that the Commission lacked jurisdiction to hear this matter prior to exhaustion of administrative procedures provided for by the IDEA?

¶16 Johnson contends that the District Court erred when it concluded that IDEA exhaustion requirements precluded his discrimination claim. Johnson emphasizes that MHRA claims and IDEA claims are distinct claims pursued through distinct procedures. Johnson originally brought this action pursuant to two sections of the MHRA:

> **Discrimination in education**. It is an unlawful discriminatory practice for an educational institution: (1) to exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms, conditions, or privileges of the institution because of ... physical disability ... unless based on reasonable grounds.

§ 49-2-307(1), MCA.

and

> **Discrimination by the state**. (1) it is an unlawful discriminatory practice for the state or any of its political subdivisions: (a) to refuse, withhold from, or deny to a person any ... services, goods, facilities, advantages, or privileges because of ... physical or mental disability ....

§ 49-2-308(1)(a), MCA.

¶17 It is Johnson's contention on appeal that the District Court's ruling improperly re-characterized his claim as an IDEA claim subject to the exhaustion requirements found in the federal IDEA. Montana has implemented the IDEA through Title 20, chapter 7, part 4 of the Montana Code Annotated and has established procedures for due process in accordance with the IDEA in Rule 10.16.3507, *et seq*., ARM. Of particular relevance here is the federal IDEA's expansive exhaustion provision which requires that parties seeking relief that is available pursuant to the IDEA must utilize the IDEA's administrative system. *See* 20 U.S.C. § 1415 (1999).

¶18 Johnson also argues that the MHRA provides the exclusive remedy for discrimination claims based on disability. Johnson points to § 49-2-509(7), MCA, which states:

> The provisions of this chapter establish the exclusive remedy for acts constituting an alleged violation of ... this chapter including acts that may otherwise also constitute a violation of the discrimination provision of Article II, Section 4, of the Montana

Constitution or 49-1-102....

§ 49-2-509(7), MCA.

¶19 The District contends that the District Court properly held that Johnson should have exhausted the remedies provided by the IDEA prior to instituting his MHRA complaint because Johnson's claim does not raise just physical access questions. Based on the premise that Johnson's discrimination claims are inextricably related to Amanda's education, the District argues for the application of the IDEA exhaustion requirements through the OPI, an agency it suggests is better equipped to deal with access issues in the educational context.

¶20 The District Court agreed with the District's characterization of Johnson's claim. Based on its determination that Johnson's claim invoked procedures and remedies within the jurisdiction of two different administrative agencies, the District Court concluded, based on policy considerations, that Johnson's claim was subject to IDEA exhaustion requirements. However, we conclude that the District Court erred when it ignored Montana's express statutory provisions which provide a parallel remedy, arguably the exclusive remedy, for discrimination claims.

¶21 This Court has interpreted the MHRA's exclusive remedy language in the context of an employment discrimination claim. *See Harrison v. Chance* (1990), 244 Mont. 215, 797 P.2d 200. In *Harrison*, the plaintiff brought tort actions against her employer in district court. Because we decided that allegations of sexual discrimination were at the heart of the plaintiff's claim, we required the plaintiff to utilize MHRA procedures. *Harrison*, 244 Mont. at 223, 797 P.2d at 205. We reasoned:

> The legislature expressed its intent that the Commission provide the exclusive remedy for illegal discrimination when it enacted subsection (7) of § 49-2-509, MCA. To allow such re-characterization of what is at heart a sexual discrimination claim, would be to eviscerate the mandate of the Human Rights Commission.

*Harrison, 244 Mont. at 223, 797 P.2d at 205.*

¶22 The District Court attempted to distinguish *Harrison* as an employment discrimination case which, unlike the complaint filed by the Johnsons, did not "substantively invoke procedures and remedies within the jurisdiction of two different administrative agencies."

However, this conclusion ignores express statutory language which establishes the Commission as the "exclusive remedy for acts *constituting an alleged violation of ... this chapter ....*" § 49-2-509(7), MCA (emphasis added). Violations of the Human Rights Act are not limited to employment discrimination. *See e.g.* § 49-2-307(1), MCA (prohibiting discrimination in education); § 49-2-308, MCA (prohibiting discrimination in access to public facilities).

¶23 Neither is our decision in *Shields v. Helena School Dist. No. 1* (1997), 284 Mont. 138, 943 P.2d 999, dispositive. In *Shields*, the parents of a disabled child alleged that the Helena School District discriminated by failing to properly classify the child as a disabled student thereby denying him his right to a free and appropriate public education. The parents alleged federal violations of 42 U.S.C. § 1983 and § 504 of the Rehabilitation Act of 1973 in addition to various state tort claims for discrimination. We held that the District Court did not err when it dismissed the complaint for failure to exhaust both IDEA and MHRA administrative procedures.

¶24 The question in *Shields* was not whether the MHRA applies to discrimination claims only after IDEA exhaustion. Rather, *Shields* addressed two sets of claims with two sets of remedies - federal claims cognizable through the IDEA, and discrimination claims based on state tort law cognizable through the MHRA. Because the Shields' claims were cognizable and relief was available pursuant to the IDEA, we held that they had to exhaust IDEA administrative procedures prior to instituting a civil action in district court. *Shields,* 284 Mont. at 148, 943 P.2d at 1005. Likewise, the Shields' claims alleging illegal discrimination could have been brought pursuant to the MHRA, which required exhaustion of MHRA's administrative procedures prior to pursuing their discrimination claims in district court. *Shields,* 284 Mont. at 150, 943 P.2d at 1006. Nowhere in *Shields* do we suggest a preference for one statutory scheme over the other - we simply required administrative exhaustion pursuant to two appropriate, independent procedures which may in some circumstances provide cumulative remedies.

¶25 The District Court relied heavily on *Koopman v. Fremont County School Dist. No. 1* (Wyo. 1996), 911 P.2d 1049. In *Koopman*, a special education student and his parents brought a cause of action against school officials, the school district, and its board of trustees pursuant to the Rehabilitation Act and the ADA. The plaintiffs alleged that the student was denied the opportunity to participate in various extracurricular activities because of his disabilities. The Wyoming Supreme Court held that because § 1415(b)(1) (E) of the IDEA provided that parents may file complaints for "any matter relating to the

identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," the relief sought by complainants was also available through the IDEA and that, therefore, exhaustion pursuant to that Act was required before complainants could pursue their claims in a district court. *Koopman*, 911 P.2d at 1053.

¶25 Relying primarily on language from *Koopman*, the District Court concluded that Johnson's claim alleging discrimination in public education was first subject to the IDEA's administrative exhaustion requirements:

> Certainly the policy behind the mandate of exhaustion under the IDEA - that disputes be first pursued through the administrative agency primarily responsible for addressing the educational needs of and preventing discrimination against the special student - is particularly relevant in circumstances such as this.

¶26 We disagree with the District Court's conclusion. The "agency primarily responsible" for preventing discrimination against Amanda Johnson is the Montana Human Rights Commission. At the heart of Johnson's claim was the assertion that the District discriminated against Amanda by failing to provide adequate physical access to GFHS. Unlike the plaintiff in *Shields*, the Johnsons did not seek relief for the District's failure to properly identify, evaluate and classify Amanda thereby depriving her of the right to a free appropriate public education. Disabled students like Amanda can receive a free appropriate public education, as attested by Amanda's 3.7 grade point average, yet suffer discrimination when the physical premises of the school deprive them of basic human dignities like access to the restroom and library or drinking from a water fountain.

¶27 Furthermore, *Koopman* did not address either a state law discrimination claim or an exclusive remedy provision in a state discrimination statute. When claims involve the simple application of the IDEA exhaustion doctrine in the absence of a parallel state statutory remedy, the logic and policy of exhaustion may apply. But where, as here, state human rights laws provide an administrative remedy through an agency with substantial expertise, there is no compelling reason to preclude the MHRA claim by first requiring IDEA exhaustion. Clearly, the Commission and its staff have expertise and exercise discretion in administering the anti-discrimination laws of Montana.

¶28 Therefore, based on our prior decisions in *Harrison* and *Shields*, and the plain language of § 49-2-509(7), MCA, we conclude that Johnson's MHRA claim may proceed

prior to exhaustion of or without ever invoking the IDEA's administrative remedies. We find no legal basis for determining that the IDEA was intended to limit applicable state human rights laws pertaining to discrimination claims.

¶29 That is not to say that the MHRA provides the exclusive remedy for every discrimination claim brought against an educational institution. However, when, as in this case, the plaintiff does not allege that the disabled student was denied a free appropriate public education or otherwise invoke the IDEA, the MHRA may offer an independent remedy provided the claim is grounded in discrimination.

¶30 Admittedly, a court may look to the gravamen of the complaint to determine whether it is grounded in discrimination. *See Harrison*, 244 Mont. at 223, 797 P.2d at 205. However, the District Court re-characterized Johnson's discrimination claim as an IDEA claim based on the unsubstantiated determination that the OPI is better suited to handle discrimination claims in the educational context. This contention is incorrect for reasons previously discussed but also because there is no remedy pursuant to the IDEA which would be of any immediate benefit to Amanda or similarly situated students. Pursuant to Rule 10.16.3121(4)(a), ARM, the remedies available to the superintendent of public education are limited to withholding state education funds, denying IDEA-B federal funds, recommending a change in the school's accreditation status, or otherwise providing for a free appropriate public education. However, the District's failure to provide a free appropriate public education was not the basis of the Johnsons' complaint. Amanda sought corrective action which the Commission is authorized to provide pursuant to § 49-2-506, MCA.

¶31 The District Court justifies its decision by reference to attempts made by the District to accommodate Amanda -- rescheduling classes, fitting desks, and designating a primary contact to name a few examples. However, the District's remedial actions are only relevant to the factual issue of whether Amanda experienced access problems, not the threshold jurisdictional issue that is now before us. Furthermore, despite the District's efforts, the Hearings Examiner found access problems with the sidewalks, cafeteria, fire alarm, sinks, parking, interior and exterior doors, and drinking fountains. In effect, the District Court's holding allows the District to remain out of compliance with the MHRA by preparing a series of IEPs on an ad-hoc basis and making little or no subsequent effort to evaluate the success of those IEPs.

¶32 Accordingly, we conclude that the District Court erred when it concluded that the

Commission lacked jurisdiction to hear this matter prior to exhaustion of administrative procedures provided for by the IDEA.

## ISSUE 2

¶33 Did the District Court err when it concluded that the Montana Human Rights Commission exceeded its statutory authority by requiring the School District to monitor Amanda's progress?

¶34 The Hearings Examiner ordered the District to aggressively monitor the needs of physically disabled students. The Hearings Examiner's order contained specific remedial measures including: preparation of a written policy statement to ensure reasonable accommodation; identification of individuals responsible for monitoring the success of accommodations and for identifying problems; consultation and dialogue with disabled students and their parents; adoption of District level policies; periodic self-evaluation by the District; preparation of draft statements of these policies and the distribution of the adopted policies to affected students and parents; and verification procedures to ensure the efficacy of the District's attempts to accommodate disabled students.

¶35 The District Court recognized that the Commission has broad authority to remedy discrimination pursuant to § 49-2-506, MCA. However, the District Court held that because the District reasonably accommodated Amanda, the remedy imposed by the Hearings Examiner created an "extra-legal duty" in excess of the Commission's statutory authority. The Hearings Examiner found, on the other hand, that the District had not reasonably accommodated Amanda's access to her school building because it had not adequately monitored obstacles she was encountering. We conclude that the Hearings Examiner's finding was supported by substantial evidence including his own personal observations and was not clearly erroneous. Furthermore, we conclude that the affirmative relief granted by the Commission was well within its statutory authority. The Commission is granted broad discretion to remedy discrimination. An order of the Commission may:

> (a) prescribe conditions on the accused's future conduct relevant to the type of discriminatory practice found;
>
> (b) require any reasonable measure to correct the discriminatory practice and to rectify any harm, pecuniary or otherwise, to the person discriminated against;

(c) require a report on the manner of compliance.

§ 49-2-506, MCA.

¶37 Amanda sought affirmative relief for herself and other disabled students who faced physical access problems. Having found discrimination in access, the Commission sought to remedy its effects by requiring the District to formalize its policy and procedure for addressing the special needs of disabled students. The remedy ordered by the Commission falls within the authority conferred by § 49-2-506, MCA and appears entirely reasonable in light of the relief requested. Consequently, we conclude that the District Court erred when it held that the imposed remedy exceeded the statutory authority of the Commission. We reverse the District Court and reinstate the order of the Commission.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ PATRICIA COTTER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ MIKE SALVAGNI

The Hon. Mike Salvagni

District Judge, Sitting for

Justice Jim Rice